AO 106 (Rev. 04/10) Application for a Search Warrant

Authorized and approved: Daniel Gridley, Jr. 9-18-24

*WMG* 9/18/24

# UNITED STATES DISTRICT COURT
### for the
### Western District of Oklahoma

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

iPhone Cellular Phone & SIM with a Pink Back Cover,
Currently Located at USPIS, 6500 Air Cargo Road,
Oklahoma City, Oklahoma

)
)
)
)
)
)

Case No.  MJ-24- 714 -AMG

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the ____Western____ District of ____Oklahoma____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C.§ 841(a)(1) | Possession of a Controlled Substance with Intent to Distribute |
| 21 U.S.C.§ 846 | Drug Conspiracy |

The application is based on these facts:

See attached Affidavit, which is incorporated by reference herein.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*B. J. Hess*

*Applicant's signature*

Brian Hess, United States Postal Inspector

*Printed name and title*

Sworn to before me and signed in my presence.

Date:  9/18/24

*Amanda Maxfield Green*

*Judge's signature*

City and state:  Oklahoma City, Oklahoma

Amanda Maxfield Green, United States Magistrate Judge

*Printed name and title*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF OKLAHOMA

|  |  |
|---|---|
| IN THE MATTER OF THE SEARCH OF: AN IPHONE CELLULAR PHONE & SIM WITH A PINK BACK COVER, CURRENTLY LOCATED AT USPIS, 6500 AIR CARGO ROAD, OKLAHOMA CITY, OKLAHOMA | )<br>)<br>)<br>)<br>)<br>)    M-24- _____<br>)        **Filed Under Seal**<br>)<br>)<br>) |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Brian Hess, being duly sworn, do hereby depose and state:

## INTRODUCTION AND AGENT BACKGROUND

1.     I am a Postal Inspector with the United States Postal Inspection Service (USPIS) and have been so employed since January 2013. I am currently assigned to the Fort Worth Division of the USPIS domiciled in Oklahoma City, Oklahoma. I am responsible for conducting investigations of crimes against the United States Mail in violation of federal law(s). My duties include the investigation of illegal mailings and the receipt of controlled substances, possession of which violates Title 21, United States Code, Sections 841(a)(1) and 846.

2.     Prior to working for the USPIS, I was employed as an agent with the Oklahoma State Bureau of Narcotics and Dangerous Drugs (OBNDD) from August 2007 to January 2013. During my employment with the OBNDD, I completed numerous

continuing education courses to include the Oklahoma Bureau of Narcotics Drug Investigator's Course and the Oklahoma Bureau of Narcotics Clandestine Laboratory Certification. In December 2011, I was certified as a single purpose narcotics K9 handler where I worked as a member of the OBNDD Interdiction Unit. I have participated in over three hundred (300) controlled-substance investigations including those for methamphetamine, marijuana, cocaine hydrochloride, cocaine base, heroin, ecstasy, and prescription narcotics. Those investigations related to the possession for sale, possession for personal use, distribution, transportation, trafficking, manufacturing, or cultivation of controlled substances.

3.    Additionally, I have received training on the investigation of dangerous and prohibited mailings, namely, controlled substance investigations, as part of my employment with the USPIS. I have completed the USPIS basic and advanced Contraband Interdiction & Investigations courses. I have participated in regional USPIS interdictions located in Seattle, WA; Sacramento, CA; Fresno, CA; Oakland, CA; San Francisco, CA; Phoenix, Arizona; and Hawaii. These activities focused on intercepting/investigating controlled-substances and or bulk cash shipments related to illicit drug distribution activities. I have assisted other United States Postal Inspectors and acted as the Affiant for the application and execution of federal search warrants to open and seize contraband, fruits, instrumentalities, and evidence of crimes that were sent via the U.S. Mail. Furthermore, over the course of my law enforcement career, I have received over 1,000 hours of law enforcement continuing education instruction provided

2

by the USPIS, the Drug Enforcement Administration, the Bureau of Alcohol Tobacco and Firearms, the OBNDD, and other state and local law enforcement agencies. I have received law enforcement awards/recognitions including an Honorable Mention from the National Association of Police Organizations, an award for Heroism by the Federal Law Enforcement Officers' Association, and the Federal Law Enforcement Congressional Badge of Bravery.

4.    The information contained in this Affidavit is submitted for the limited purpose of establishing probable cause to secure a search warrant for: an iPhone cellular phone & SIM with a pink back cover (herein referred to as "TARGET DEVICE"); seized during the arrest of Dayna L. WALLS ("WALLS"). The TARGET DEVICE is currently located in the custody of the United States Postal Inspection Service at 6500 Air Cargo Road, Oklahoma City, Oklahoma 73195 (Western District of Oklahoma) and as described further in Attachment A (physical description), for evidence of violations of federal law, to wit: 21 U.S.C. § 846, Drug Conspiracy and or evidence of 21 U.S.C. § 841, Possession with intent to Distribute Controlled Substances, as described further in Attachment B (description of items to be seized).

5.    This Affidavit is based upon the Affiant's personal investigation and upon information received from other law enforcement officers and agents and may not be inclusive of all evidence or information available or of all facts known to me relative to this investigation. Rather, I have set forth only the facts that I believe are necessary to establish probable cause for the requested warrant.

3

## BACKGROUND REGARDING CELLULAR DEVICES

6. Based upon my training and experience, your Affiant is aware:

a. Individuals involved in trafficking illegal narcotics often use cellular phones to maintain contact with other co-conspirators, including suppliers, transporters, distributors, and purchasers of illegal narcotics. Such cell phones and their associated memory cards commonly contain electronically stored information which constitutes evidence, fruits, and instrumentalities of drug trafficking offenses including, but not limited to, the phone directory and/or contacts list, calendar, text messages, e-mail messages, call logs, photographs, messaging applications, and videos.

b. Drug dealers often switch phones in order to avoid detection from law enforcement, and that drug dealers often have multiple phones that they use for different co-conspirators in order to separate their drug dealing.

c. Drug dealers keep old cellular telephones no longer in use in order to save telephone numbers of other co-conspirators, as well as other relevant information including text messages and photographs.

d. Individuals involved with sending/receiving controlled substances through the US Mail will often utilize their cellular phones to access the internet in order to search for parcel tracking numbers and or to receive parcel tracking status updates identifying the arrival of suspect parcels.

e. Drug dealers and users oftentimes have stored photographs, videos and/or text and voice messages associated with the use and distribution of controlled dangerous

substances and proceeds derived therefrom for their own records and/or for the purpose of furthering their distribution activity maintained on their cellular telephones and other electronic handheld devices.

f. Drug distributors/consumers will often use coded words and phrases, as well as, extremely vague conversations, in order to discuss their plans and prevent anyone from overhearing their conversations and from recognizing that the conversations concern a criminal drug conspiracy.

g. Prospective drug purchasers, recipients, and/or users will often telephone the drug distributor to obtain permission to come to the distributor's location *i.e.* his business, residence, *etc.*, to obtain the drug.

h. Drug distributors will often have "sales people" bring prospective drug purchasers to him or her and these sales people will receive payment in cash, or in kind (a quantity of drugs), for bringing drug users/buyers to the distributor. These "sales people" often use the telephone to contact the distributor by voice or text message to arrange these meetings.

## PROBABLE CAUSE

7. During February 2024, investigators located records detailing two US Mail parcels destined to different addresses in Oklahoma City each of which were suspected of containing controlled substances. One parcel was intercepted and seized while the other was delivered to its destination residence prior to being located by investigators. On the morning it was delivered, investigators established surveillance on the residence and

5

observed a parcel being placed into a vehicle parked outside the house. When the vehicle left the residence, investigators covertly followed it. Ultimately a traffic stop was conducted on the vehicle. The driver and sole occupant was identified as WALLS.

8. WALLS admitted to a parcel being in the vehicle but denied knowing what it contained. Permission was granted for investigators to remove the parcel from the vehicle and take custody of it. Investigators also seized a cellular phone from WALLS. WALLS was not arrested and was released from the scene of the traffic stop.

9. Investigators obtained search warrants for the seized parcel from the mail, the seized parcel from WALLS vehicle, and WALLS' cellular telephone. Both parcels were found to contain a clear crystalline substance suspected of being methamphetamine. The seized parcel from WALLS' vehicle contained approximately 6,993 grams of a clear crystalline substance which field tested positive for methamphetamine.

10. Pursuant to the cellular phone warrant, investigators conducted multiple review of WALLS' cellular phone data. Multiple items of interest were located on the phone including numerous conversations regarding the collection of money, arrangement of meetings, payment of debts, association with cartel activity, and conversations consistent with the distribution of controlled substances.

11. On September 4, 2024, WALLS was indicted in the Western District of Oklahoma by Grand Jury for possession of methamphetamine with intent to distribute and an arrest warrant was issued for her arrest.

12. On September 13, 2024, I along additional investigators, arrived at WALLS' residence. I approached the front door and knocked several times. The door was answered by WALLS. WALLS was holding the **TARGET DEVICE** in her hand when she came to the door. I greeted WALLS and she invited investigators into her residence. I asked WALLS if she had any shorts or pants, she could put on so that we could speak. WALLS said she did and led me and TFO Johnson to her bedroom to retrieve the clothing. WALLS placed the **TARGET DEVICE** on the bed. WALLS utilized her master bathroom to change clothes and then agreed to speak with investigators in her driveway. Once in the driveway, I explained to WALLS she had an outstanding federal arrest warrant.

13. I placed handcuffs on WALLS and asked what she would like to do concerning her pets located outside the residence. WALLS requested her phone to contact a neighbor for assistance with her dogs. WALLS granted TFO Johnson permission to re-enter her residence and retrieve her cellular phone. TFO Johnson obtained the **TARGET DEVICE** and brought it out to the driveway. WALLS placed a call on speakerphone to her neighbor. Her neighbor agreed to walk over to the residence to assist with the animals.

14. WALLS was escorted to my vehicle to be transported to the federal courthouse for processing with the United States Marshals Service. I maintained custody the **TARGET DEVICE**. Prior to transport, I read WALLS her rights per Miranda. WALLS acknowledged that she understood her rights and said she was willing to speak with

7

investigators. WALLS was asked for and granted permission for investigators to conduct a search of the **TARGET DEVICE** during the transport to the federal courthouse.

15. WALLS directed TFO Johnson's attention to a conversation with an individual she identified as Cruz (currently incarcerated individual). WALLS' previous cellular phone contained messaging conversations the content of which implicated Cruz as directing activities consistent with drug distribution. WALLS said Cruz frequently changed his contact information. WALLS denied having any current information on drug distribution activities. TFO Johnson asked WALLS about an outgoing text in her phone with that individual (Cruz) advising Betty was trying to get ahold of him, saying she needs that now. WALLS stated Betty had told her to tell him (Cruz) that she had money. When asked about whether that was related to drugs, WALLS stated, I am sure that it is. WALLS confirmed Betty was, "Betty Rios." Previous message conversations in her other phone were located and reviewed with a contact named Betty and were consistent with drug distribution activities.

16. WALLS said that she got in trouble with Cruz for sending that message because he does not want her relaying messages. WALLS explained she had told Cruz that she had never been in trouble before but since she had been with "Roller" her life has gone downhill. WALLS reiterated she had told Cruz she was done with being involved.

17. TFO Johnson asked WALLS about the stored contact named, "Murdr." WALLS indicated she did not know who it was. TFO Johnson pointed out that she had a conversation with the person. WALLS stated he was trying to get ahold of her to obtain

8

phone data. TFO Johnson asked her about a money transfer which was sent yesterday for $60. WALLS said that money did not go to that guy.

18. At the conclusion of the transport, investigators discontinued reviewing the data on the **TARGET DEVICE**. I transported the **TARGET DEVICE** to the USPIS Oklahoma City Domicile, where it was secured.

19. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **TARGET DEVICE**.

20. In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the **TARGET DEVICE** to communicate with other suspected co-conspirators. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their distribution activities, and for the individuals to be involved for weeks and months longer than they claim.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

21. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed

via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

    a.    *Forensic evidence.* This application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device(s) were used, the purpose of its use, who used it, and when.

    b.    *Nature of examination.* The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

    c.    *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## MANNER OF SEARCH AS TO VIDEOS, PHOTOGRAPHS, AND STORED COMMUNICATIONS

22.   Your Affiant would note that based upon his aforementioned training and experience, relevant and/or incriminating text messages, videos, and photographs

oftentimes are comingled on cellular telephones and electronic handheld devices with text messages, videos, and photographs which do not have an evidentiary value. However, criminals engaged in communications furthering the nature of their criminal enterprise, in particular with investigations involving the use/distribution of controlled dangerous substances, many of these communications will involve cryptic/guarded and or otherwise coded jargon which is oftentimes utilized to conceal the nature of their illegal communication. As a result, a limited review of the content of each communication will be necessary to determine the nature of the communication and whether it is relevant to that information particularly set forth above within your Affiant's Affidavit.

23. Searching the electronic handheld device for the evidence described above may require a range of data analysis techniques. In some cases, it is possible for agents to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. For example, agents may be able to execute a 'Keyword" search that searches through the files stored in a computer for special words that are likely to appear only in the materials covered by a warrant. Similarly, officers may be able to locate the materials covered in the warrant by looking for particular directory or file names. In other cases, however, such techniques may not yield the evidence described in the warrant. Criminals can mislabel or hide files to evade detection; or take other steps designed to frustrate law enforcement searches for information. These steps may require officers to conduct more extensive searches, such as scanning areas of the device's

memory not allocated to listed files, or opening every file and scanning its contents briefly to determine whether it falls within the scope of the warrant. In light of these difficulties, your affiant requests permission to use whatever dates analysis techniques appear necessary to locate and retrieve the evidence described above.

## AUTHORIZATION REQUESTS

24. Based on the above information, I submit there is probable cause to believe that a search of the **TARGET DEVICE** will yield evidence of the Defendant's violations of Title 21 USC Sections 846 and 841. Therefore, I respectfully request that this Court issue a search warrant for the **TARGET DEVICE**, described in Attachment A, authorizing the seizure of the items described in Attachment B.


BRIAN HESS
United States Postal Inspector
United States Postal Inspection Service


Sworn and subscribed to before me this 18th day of September 2024.

AMANDA MAXFIELD GREEN
United States Magistrate Judge
Western District of Oklahoma

12

## ATTACHMENT "A"

TARGET DEVICE: iPhone & SIM with a pink back cover. The model and IMEI are not visible on the exterior of the device and unable to be determined without accessing the device. The **TARGET DEVICE** is currently located in the custody of the United States Postal Inspection Service at 6500 Air Cargo Road, Oklahoma City, Oklahoma 73195 (Western District of Oklahoma).





## ATTACHMENT "B"

All records on the Device, described in Attachment A, that relate to violations of law, including, specifically 21 U.S.C. § 846, Drug Conspiracy and or evidence of 21 U.S.C. § 841, Possession with intent to Distribute Controlled Substances.  Your Affiant believes there are possibly text messages, contact information, photographs or other items communicated within this device that provide information about illegal activities which involve Dayna L. WALLS ("WALLS") and or possible co-conspirators including:

a.  Stored communications which are voice recordings/messages, text messages (SMS) and multimedia messages (MMS), emails and attachments, read or unread which relate to and provide evidence of criminal activity described in this affidavit;

b.  Stored communications voice or text based located within downloadable messaging applications or social media applications

c.  All internet usage history that may reveal evidence of drug trafficking, such as package tracking, internet mail communications, electronic payment receipts, etc.;

d.  Call logs/histories depicting incoming/outgoing numbers dialed to and from the above described telephone device which relate to and provide evidence of the above described criminal activity and further described in this affidavit;

e.  Internet World Wide Web (WWW) browser files including browser history, browser cache, browser favorites, auto-complete form history and stored passwords;

f.  Contacts, address books and calendars, customer lists and related identifying information such as names, nicknames and/or monikers within the above described telephone device which relate to and provide evidence of the above described criminal activity and further described in this affidavit;

g.  Photographs, audio/video recordings with their associated metadata relating to and which provide evidence of the above described criminal activity and further described in this affidavit;

h.  Stored location information including global positioning system (GPS) data indicating coordinates, way points, tracks and locations in which the phone has traveled; and,

i.  Data and user records/information, password(s) that would assist in identifying/confirming the owner(s)/user(s) of the above referenced property to be searched.